```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THE EXPORT-IMPORT BANK of THE
REPUBLIC OF CHINA,

                Plaintiff,

        v.                              15 CV 9630(KPF)

CENTRAL AFRICAN REPUBLIC,

                Defendant.
------------------------------x
                                        New York, N.Y.
                                        December 20, 2016
                                        3:10 p.m.
Before:

                HON. KATHERINE POLK FAILLA,

                                        District Judge

                       APPEARANCES

SULLIVAN & WORCESTER, LLP
     Attorneys for Plaintiff
BY:  CAITLIN C. FAHEY
     ANDREW T. SOLOMON
```

1             (In open court; case called)
2             THE COURT: Good afternoon.
3             Ms. Fahey, would you or Mr. Soloway be taking the
4    laboring for this afternoon.
5             MS. FAHEY: I am.
6             THE COURT: I will direct my questions to then. Thank
7    you very much.
8             Let me go through why we're here, and I am just going
9    to give you a bill of a spoiler alert. I have some questions
10   about you about the substance of your claims and it is highly
11   likely that I am going have some questions that might require a
12   supplemental letter submission from you. So I just want to let
13   you know about that. Let me begin by noting that we're here
14   today on an order to show cause for a default judgment. The
15   circumstances and procedural history of the this case is
16   following:
17            The complaint was filed in December of 2015, and
18   service was made on the Central African Republic, the
19   defendants in case, on or about the 16th of January 2016. So
20   that was made by registered mail to the address in the service
21   provision of the two loan agreements that are at issue in this
22   litigation. Service was also made on the CT Corporation system
23   on January 19th, 2016. Although, they refused to accept
24   service. There was a motion that I granted to file an amended
25   complaint in May of this year. That complaint was filed on

May 11th. Services of that complain was undertaken on the 12th of May. And then in October I was advised that the plaintiff had sought a certificate of default from the clerk's office of this district and that papers were submitted to me in order to show cause for a default judgment. I entered an order to that effect and that was served on the defendant and here we are today at that proceeding.

Let me understand a few things, Ms. Fahey. First of all on the issue of service -- and you will excuse me for turning my gaze from you but I want to look at my own notes -- the amended complaint and the complaint were served on CT Corporation and then on the Central African Republic; is that correct?

MS. FAHEY: Correct.

THE COURT: In addition to the two addresses contained in the loan agreements?

MS. FAHEY: Yes. It is the same address for both loan agreements.

THE COURT: That is what I wanted to know.

Were the order to show cause materials served differently? I did not understand that they were served on CT. Is that because CT had previously rejected or was there some other reason?

MS. FAHEY: Correct. We received two letters from CT Corporation saying that they had no record of the Defendant

1  Central African Republic in their records as their being the
2  registered agent for the Central African Republic.
3            THE COURT:  I think the Central African Republic
4  Finance Minister was served with the order to show cause
5  paperwork; is that correct?
6            MS. FAHEY:  Correct.
7            THE COURT:  Had he been served previously with the
8  amended complaint?  I know that the ambassador to the U.N. had
9  been so served but I didn't know whether the finance minister
10 had also been served with these other papers.
11           MS. FAHEY:  So the address in the loan agreements is
12 for the Minister of Finance.
13           THE COURT:  Thank you.
14           So the complaint was served?
15           MS. FAHEY:  Correct.
16           THE COURT:  The amended complaint was served.
17           MS. FAHEY:  Correct.
18           THE COURT:  The order to show cause paperwork was
19 served?
20           MS. FAHEY:  Correct.  We have return receipts from the
21 Central African Republic for all of those.  I believe the only
22 one the Court doesn't have is a declaration showing the return
23 receipt from the order to show cause papers, which was dated on
24 November 6th and we received December 5th.  I have that now if
25 you would like to see that.

1           THE COURT:  I will in due course.  Thank you.  I
2  accept that you do have those materials.
3           Have you heard anything from the Central African
4  Republic or any representative of it with respect to the loan
5  agreements that are the subject of this litigation?
6           MS. FAHEY:  No.
7           THE COURT:  More broadly has your client heard from
8  anyone in Central African Republic since this case was filed?
9           MS. FAHEY:  Not since this case has been filed.
10           THE COURT:  Let me then turn to what you want.  What I
11  understand your client wants is for entry of a default judgment
12  and the finding of both the principal on the loans and the
13  accrued interest; correct?
14           MS. FAHEY:  Yes.
15           THE COURT:  I will say it is a concern and maybe it is
16  only an issue, but it may rise to the level of concern.  This
17  was an agreement that was scheduled to take place over a 20- or
18  25-year period; is that fair?
19           MS. FAHEY:  I believe it is 25 years.
20           THE COURT:  So the first payments were due in or about
21  1994?
22           MS. FAHEY:  The first principal payments.
23           THE COURT:  Yes.  Thank you for the clarification.  So
24  The first principal payments in 1094.
25           There was a 66-month grace period; is that correct as

1 well?

2 MS. FAHEY: Yes. For the principal payments.

3 THE COURT: So my question is: They didn't pay and
4 they made a partial payment in 1994; correct?

5 MS. FAHEY: No. They made a partial payment on
6 interest, which I believe was the first interest payment under
7 the first loan agreement and then a partial payment on the
8 second interest payment under the first loan agreement.

9 THE COURT: Let me be clear for myself. Thank you.
10 You're saying that the Central African Republic, the
11 defendant in this case, made partial interest payments on each
12 of the two loans and no principal payments on either?

13 MS. FAHEY: They made partial interest payments on the
14 first loan and no principal payments on either loan.

15 THE COURT: By process of elimination they made no
16 interest payments, partial or otherwise, on the second loan?

17 MS. FAHEY: Correct.

18 THE COURT: Well, here we are in 2015 and I am trying
19 to figure out whether there is a limitations issue. It is not
20 for me an easy question. I have been looking at various parts
21 of the CPLR of the State of New York, including Section 206(a)
22 and Section 213. My question is: I do understand that if
23 might have been an overreaction to find them in default in 1994
24 when in the first payment wasn't made and then accelerate the
25 balance and the interest payments and all of that; but at some

point one should have figured out that they were not paying and certainly that seems to me to have taken place before the 2007, which is when I think they started asking questions about what are they owed and could your client consider refinancing it so is it your position that the limitations period has just never begun, it never has run?

MS. FAHEY: Our position is that because CAR acknowledged the loan agreements under New York General Obligations Law Section 17-101, that written acknowledgment constitutes a restarting of the statute of limitations period. So the Section 17-101 states that when you have a writing signed by the debtor recognizing an existent debt and there is nothing inconsistent with intention to pay that debt, that restarts the statute of limitations period. Attached to our amended complaint is a February 2015 acknowledgment signed by the Minister of Finance acknowledging the then current balance on the loans.

THE COURT: Very fair. I will confess I have looked so much at the CPLR, I had not looked at the General Obligations Law and I will look into that.

What then does that get you? Does that get you all of the accrued interest in the past? You have said that it restarts the limitations period?

MS. FAHEY: Correct.

THE COURT: Does that mean that all of the principal

1  payments due previously, they are all still due. All of the
2  interest that has accrued over the, what, 20-some years in the
3  past, that also remains?
4         MS. FAHEY:  Correct.
5         THE COURT:  What is the grand total?
6         MS. FAHEY:  The grand total as of today is over $154
7  million.
8         THE COURT:  What was original amount of the two loans?
9         MS. FAHEY:  The original amount -- there were loans
10 for $60 million. We sued on 58 million in principal. That had
11 not been paid.
12        THE COURT:  So 58 million in principal is now 154
13 million with all of the interest?
14        MS. FAHEY:  With accrued interest at 4 percent and a
15 default judgment at 10 percent.
16        (Off the record discussion)
17        THE COURT:  We're back on the record.
18        I am taking a moment as I talk to you to confirm for
19 myself that GOL 17-101 is what you say it is. I see that it
20 says, An acknowledgment or promise contained in a writing
21 signed by the party to be charged thereby is the only competent
22 evidence of a new or continuing contract whereby to take an
23 action out of the operation of the provisions of limitations of
24 time for commencing actions under the civil practice law and
25 rules other than an action for the recovery of real property,

1  full stop. Next sentence: This section does not alter the
2  affect of a payment of principal or interest.
3           So I have now answered my own two questions, which you
4  very carefully answered for me previously.
5           May I just understand, please, can you tell me who was
6  it that validated this debt or reaffirmed this debt in 2015?
7           MS. FAHEY: It is signed by CAR's Minister of Finance.
8           THE COURT: Am I looking at the wrong docket, which is
9  a November 8, 2014 letter?
10          MS. FAHEY: That's the correct document.
11          THE COURT: Thank you.
12          Please continue.
13          MS. FAHEY: Our client sent the letter on October 8th,
14 2014 and we got the response from the Minister of Finance,
15 which is dated February 2nd, 2015, agreeing with our client's
16 statement of balance for CAR.
17          THE COURT: The individual, the signatory, is in fact
18 the Minister of Finance according to the title that he gives
19 under the signature; correct?
20          MS. FAHEY: To the best of our knowledge that is
21 correct.
22          THE COURT: For my own edification the bottom of this
23 second page of your letter, which has the boxes with agreed and
24 disagreed and then signature, date and title, that was provided
25 by your client. Your client put that there and it was as easy

1  as quite literally putting an X in the box and signing one's
2  name and giving one's title; is that correct?
3            MS. FAHEY:  That's correct.
4            THE COURT:  Except also the application of several
5  seals.  Do you know what those are?  Are those from the Central
6  African Republic or from your client?
7            MS. FAHEY:  I believe they are.  There is writing in
8  French saying that it arrived on December 3rd, 2014.  I can't
9  make out what the other stamps say.  To the best of our
10 knowledge those are from CAR and they are stamped Minister of
11 Finance and Budget and Cabinet in French.
12           THE COURT:  I do see superimposed on the signature of
13 the Minister of Finance the seal of the Ministry of Finance of
14 the Central African Republic; correct?
15           MS. FAHEY:  Correct.
16           THE COURT:  I would like to take a few minutes off the
17 bench.  Will you indulge me?
18           MS. FAHEY:  Sure.
19           THE COURT:  Thank you.  I will be back in a moment.
20           (Recess)
21           THE COURT:  Ms. Fahey, I had a list of questions for
22 you and now I have a much shorter list of questions for you.
23           My read of your proposed default judgment does not
24 include the cost of enforcement, by which I mean the cost of
25 this litigation and the attorneys' fees that have been accrued

1  including your appearance today.  Has your client made a
2  decision to not seek those fees?
3       MS. FAHEY:  That's correct.
4       THE COURT:  I ask you this then:  It is my belief now
5  that I have had the clarification of the New York General
6  Obligation Law that accepting the allegations in your amended
7  complaint as true as I must because there is no one no to
8  object to those and that is what happens in setting a default
9  judgment.  You have adequately stated claims under the first
10 and second loan agreement.  What I would ask you to do, please,
11 is the following:  I will enter a default judgment in the form
12 that you are suggesting, but could you please send to me
13 sometime this week an amended proposed default judgment in
14 Word.  And if you could, could I impose upon you the higher
15 math calculations of figuring out what would be due through and
16 including Friday of this week, which is the 23rd of December.
17 If you give it to me sooner than Friday, I will execute it by
18 Friday or tell you that I cannot for some reason and let you
19 know.  I am concerned about my ability to do the math in this
20 case and I rather you folks do it.
21      Again, having spoken with you today, I am convinced
22 that your adversary, the Central African Republic, has been
23 served properly pursuant to the agreement.  I have looked into
24 whether under the @Foreign Sovereign Immunities Act this is
25 appropriate to bring them within the jurisdiction of this Court

and I find that they are properly brought here. They have been given many forms of notice of this litigation. They have done nothing in consequence. I will and am entering default judgment in case in favor of your client in the amounts that you have suggested because the math does appear to be correct. I will check it when I get it from you again.

I would ask you as well, please, to get a copy of this transcript in the ordinary course. If you get it, I will receive it automatically. It may be that at some point someone comes into this case wanting to know how we got to this point and this transcript will aid them.

Anything else you would like me to know this afternoon?

MS. FAHEY: No, your Honor.

THE COURT: I will just note, because I am doing some of this from memory, I cannot enter a default judgment to the question of damages. I am finding that they are a sum certain, and the sum is ascertainable and that is the amounts that are listed in your proposed default judgment plus the interest calculations that I have asked you to do. So that is the manner in which these damages will be calculated.

That is all I have. Thank you very much.

Sir, is there anything you would like to add?

MR. SOLOMON: No, your Honor. Thank you.

THE COURT: Thank you all very much for coming in

Gck6expc

1  today.
2          MS. FAHEY:  Thank you.
3                              o0o